UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JULIA HUTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-CV-204 JVB |
| | ) | |
| SOLVAY PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff sued Defendant for violation of the Indiana Wage Payment Statute, intentional infliction of emotional distress, age discrimination, and retaliation. (DE 17, Second Am. Compl.) On September 8, 2010, Defendant moved to dismiss Counts I and II of Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted. (DE 19, Mot. to Dismiss.) For the reasons discussed below, Defendant's motion to dismiss is DENIED.

**A.      Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[1] As the Supreme Court has stated, "the tenant that a court must

---
[1]      In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1940 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

**B.**     **Factual Background and Procedural History**

On January 15, 2001, Plaintiff was employed by Defendant as a Sales Representative. (DE 17, Second Am. Compl., ¶5.) From 2001 through 2007, Plaintiff continued to be employed by Defendant and consistently met or exceeded Defendant's performance expectations for sales representatives. (*Id*., ¶¶5, 8, 9.) In fact, Plaintiff was consistently ranked in the middle to upper half of the regional sales force, which consisted of about seventy-three to seventy-five sales representatives. (*Id*., ¶17) According to Plaintiff, however, her employment conditions later changed and she was subject to outrageous treatment and discrimination by Defendant.

---

unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007).

**(1)** *Alleged Acts of Discrimination*

In the beginning of 2008, Defendant began to generate negative field reports and employment evaluations of Plaintiff's performance. (*Id.*, ¶¶10, 11.) Plaintiff contends that these reports and evaluations were contrary to her actual performance. (*Id.*) She states that Defendant falsified these documents because of Plaintiff's age and past complaints she made to Defendant's Human Resources Department. (*Id.*, ¶32.) Additionally, throughout January, February, and March 2008, Defendant failed to provide Plaintiff with the same support provided to other employees. (*Id.*, ¶13.) In essence, Plaintiff contends that Defendant was trying to make her job intolerable so she would resign, while also developing a record to justify her ultimate termination if she failed to resign. (*Id.*, ¶32) Plaintiff maintains that Brian Lozen, Plaintiff's District Sales Manager; Jeff Westfall, Plaintiff's Regional Manager; and Defendant's Human Resources Department were all involved in carrying out this plan. (*Id.*, ¶¶16, 25.) Similarly situated younger employees were not subjected to similar treatment. (*Id.*, ¶39.)

On March 19, 2008, Plaintiff's husband telephoned Defendant's Human Resources Department to complain about Defendant's treatment of his wife. (*Id.* ¶14.) Plaintiff later made the same complaints. (*Id.*, ¶15.) Plaintiff also reported to the Human Resources Department that Defendant had put pressure on Abbott sales representatives, who sold some of the same products as Plaintiff, to make up negative information about Plaintiff or they would be fired. (*Id.*, ¶29.) Plaintiff contends that Defendant never followed up on her complaint, and the negative information provided by the Abbott sales representatives was included in her performance evaluations. (*Id.*)

The Human Resources Department responded to Plaintiff's complaints by imposing a "cooling off" period between Plaintiff and Lozen. (*Id.*, ¶16.) However, on March 21, 2008, Good

Friday, Lozen called Plaintiff at 6:42 p.m. and belligerently yelled at her for thirty-eight minutes. (*Id.*) Lozen stated, "how dare you call Human resources on me." (*Id.*) Plaintiff contends that Lozen called in retaliation for Plaintiff's complaint of age discrimination to Defendant's Human Resources Department. (*Id.*)

**(2)** *Plaintiff Placed on Informal Warning Status*

On March 26, 2008, Lozen e-mailed Plaintiff indicating that she was being placed on "informal warning status" and providing her with a Performance Improvement Plan concerning "administrative issues" that dealt with reporting on new software. (*Id.*, ¶19.) Plaintiff was given five days, which included a weekend, to complete the tasks outlined in the informal warning. (*Id.*, ¶22.) However, Plaintiff had already partially completed some of the tasks identified in the informal warning by the time she received it, despite the fact that Defendant failed to provide training on the new software, which Plaintiff repeatedly requested. (*Id.*, ¶20.)

Shortly after this incident, Plaintiff contacted Human Resources and spoke with Kimberly Williams about it. (*Id.*, ¶23.) Plaintiff told Williams that she feared retaliation and was concerned about attending an upcoming sales meeting in Florida. (*Id.*) Williams told Plaintiff that the short time provided in Lozen's March 26, 2008, e-mail was inappropriate, and Williams would be in Florida to discuss these issues with Plaintiff. (*Id.*, ¶24.)

**(3)** *Meeting in Florida*

On April 2, 2008, Williams, Lozen, and Westfall took Plaintiff to lunch while in Florida on a business trip. (*Id.*, ¶25.) However, they would not let Plaintiff eat and berated her for her

alleged administrative failures. (*Id.*) They also never addressed Plaintiff's concerns, as Williams had assured Plaintiff that they would. (*Id.*)

**(4)     *Plaintiff Issued Formal Record of Warning***

On April 28, 2008, Defendant issued Plaintiff a Formal Record of Warning. (*Id.*, ¶27.) Neither party disputes the fact that, when an employee is under a formal or final warning status, Defendant retains all earned incentive pay and bonuses. (*See id.*, ¶21.) The Formal Record of Warning stated that Plaintiff was insubordinate to Lozen. (*Id.*, ¶28.) It also addressed alleged administrative deficiencies in Plaintiff's performance. (*Id.*, ¶27) Pursuant to its formal warning policy, Defendant did not pay Plaintiff earned incentive compensation while she was on formal warning status. (*Id.*, ¶32.)

Plaintiff contends that the Formal Record of Warning was unwarranted; thus, she should have received her earned incentive compensation. First, Plaintiff asserts that she had already remedied the administrative deficiencies alleged in the warning by partially completing her reports on Defendant's new software. (*Id.*, ¶20.) Second, Plaintiff contends that she was never insubordinate to Lozen. (*Id.*, ¶28.) Third, Plaintiff states that her performance evaluations misrepresented her sales performance. (*Id.*, ¶¶10, 29.) She contends that the evaluations were falsified in an effort to deny her incentive pay and bonuses, as well as to encourage her to resign or to set her up for future termination. (*Id.*, ¶¶11, 21, 32.)

**(5)     *Additional Allegations of Discrimination***

Plaintiff alleges other actions that she believes constitute harassment, retaliation, and age discrimination. For example, Plaintiff states that Lozen and Westfall refused to approve her

5

expense reports. (*Id.*, ¶30.) Additionally, in April 2009, Plaintiff was required to take FMLA leave due to a short-term disability. (*Id.*, ¶35.) During her leave, Lozen failed to provide Plaintiff with vital job information, including administrative requirements, product information, and selling aids. (*Id.*) By October 2009, nearly three months after returning to work and despite numerous requests, Plaintiff was still not provided this information. (*Id.*, ¶36.) Furthermore, Lozen cancelled several of Plaintiff's scheduled field contacts and failed to respond to Plaintiff's e-mail requests to set up alternative dates. (*Id.*, ¶37.) In December 2009, Lozen blamed Plaintiff for the cancellations. (*Id.*)

As a result of Defendant's alleged mistreatment, Plaintiff experienced severe anxiety and clinical depression requiring professional intervention. (*Id.*, ¶33.) Consequently, Plaintiff was forced to take an FMLA leave of absence from May 5, 2008, to July 28, 2008. (*Id.*)

The formal warning was lifted on December 11, 2009. (*Id.*, ¶41.) Plaintiff is still Defendant's employee. (*See* DE 20, Br. in Supp. of Mot. to Dismiss at 6 (describing Plaintiff as a current employee of Defendant)). However, Defendant has never paid Plaintiff earned compensation for the second, third, and fourth quarters of 2008, and all four quarters of 2009, the time during which Plaintiff was on formal warning status. (DE 17, Second Am. Compl., ¶32.)

**(6)** *Procedural History*

On August 25, 2010, Plaintiff filed her Second Amended Complaint alleging violation of the Indiana Wage Payment Statute, intentional infliction of emotional distress, age discrimination, and retaliation. (*Id.*, Cts. I–IV) Defendant then moved to dismiss the two pendent state law claims: violation of the Indiana Wage Payment Statute and intentional infliction of emotional distress. (DE 19, Mot. to Dismiss.)

6

C.     **Discussion**

Defendant asserts that the first count of Plaintiff's Second Amended Complaint, which alleges violation of the Indiana Wage Payment Statute, must be dismissed because Plaintiff admits she had no entitlement to the compensation she claims. (*Id.*, ¶2.) Additionally, Defendant contends that the second count of Plaintiff's Second Amended Complaint must also be dismissed because Plaintiff failed to allege sufficient facts that could give rise to a plausible claim of intentional infliction of emotional distress. (*Id.*, ¶3.)

**(1)**     *Count I: Plaintiff's Claim Under the Indiana Wage Payment Statute*

Count I alleges that Defendant violated the Indiana Wage Payment Statute. (DE 17, Second Am. Compl., Ct. I.) Defendant contends that Count I must be dismissed with prejudice because Plaintiff admitted that "she received warnings that made her ineligible for the bonuses and incentive pay that form the basis of her claim." (DE 19, Mot. to Dismiss, ¶2.)

The Indiana Wage Payment Act provides that "every . . . corporation . . . doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. . . . Any contract in violation of this subsection is void." Ind. Code § 22-2-5-1(a). The statute defines "the amount due each employee" as "wages." *Id.* § 22-2-5-2. The Act defines "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." *Id.* § 22-2-9-1(b). Failure to pay wages as required by this statute can result in an order to pay liquidated damages up to double the amount of wages due plus the employee's attorney fees. *Id.* § 22-2-5-2.

In *Highhouse v. Midwest Orthopedic Institute P.C.*, the Indiana Supreme Court held that a bonus may be a wage subject to the Indiana Wage Payment Act "if it is compensation for time worked and is not linked to a contingency such as the financial success of the company." 807 N.E.2d 737, 740 (Ind. 2004) (citing *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind. Ct. App. 1994)). In essence, the bonus is a wage under the statute if it is determined by considering the employee's own time, effort, or product, and does not depend on the expenses of the business as a whole or the achievement of the company's financial goals. *Id.* (citing *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121–22 (7th Cir. 1998); *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1113 (S.D. Ind. 2001)).

Plaintiff's earned incentive compensation and bonuses are wages under the Act. Plaintiff describes the bonuses as "earned incentive compensation and bonuses *for sales performance*." (DE 17, Second Am. Compl., ¶21 (emphasis added)). Additionally, although Defendant contends that "there was never a wage that was due and owing under the Indiana Wage Payment Act," Defendant asserts that this is because Plaintiff was on "warning status," not because the earned incentive pay is not a wage under the Act. (*See* DE 20, Br. in Supp. of Mot. to Dismiss at 3.)

Plaintiff contends that Defendant's failure to pay her earned incentive compensation violates the Indiana Wage Payment Act. (DE 17, Second Am. Compl., Ct. I.) More specifically, she alleges that Defendant placed her on "warning" status in bad faith and therefore owes her the incentive compensation. (DE 25, Resp. Br. at 7 ("Indiana courts clearly recognize, in these types of cases, that employers may not execute their policies in bad faith and, thereby, deny their employees bonuses to which they are entitled simply because they are claiming to follow their written policies")).

In response, Defendant contends that Plaintiff has no possible claim under the Indiana Wage Payment Statute because Plaintiff was not entitled to incentive or bonus pay when she was placed on warning status. (DE 26, Reply Br. at 3–4.) Defendant states that Plaintiff's opinion of her job performance is to be given no weight, and Defendant urges this Court not to "sit as a superpersonnel department where disappointed . . . employees can have the merits of an employer's decision replayed to determine best business practices." (*Id.* at 4 (citing *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (internal quotations omitted))).

At this stage of the case, the Court accepts Plaintiff's statements as true. Assuming Plaintiff was wrongfully placed on warning status, and her incentive pay was wrongfully withheld, her claim may be meritorious. Therefore, this Court denies Defendant's motion to dismiss Count I of Plaintiff's Second Amended Complaint.

**(2)**     *Count II: Plaintiff's Claim of Intentional Infliction of Emotional Distress*

The second count of Plaintiff's complaint alleges intentional infliction of emotional distress resulting from the discrimination and negative treatment Plaintiff claims to have suffered during the past few years of her employment. (DE 17, Second Am. Compl., Ct. II.) In turn, Defendant asserts that Count II must be dismissed because Plaintiff has failed to meet the pleading standards set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). (DE 19, Mot. to Dismiss, ¶3.)

In Indiana, intentional infliction of emotional distress is established when a person engages in extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress to another. *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (citing *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)).

The Court has already determined that the claim under the Wage Payment Statute will go forward. Additionally, at this early stage the Court will allow Plaintiff's claim for intentional infliction of emotional distress to proceed to discovery.

**D.    Conclusion**

Defendant's Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint (DE 19) is DENIED.

SO ORDERED on February 11, 2011.

 s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge